# In the United States Court of Federal Claims

No. 24-1282C
(Originally Filed: February 6, 2025)
(Re-issued: February 11, 2025)[1]

* * * * * * * * * * * * * * * * * * * *

ACMESOLV, LLC,

       *Plaintiff*,

v.

THE UNITED STATES,

       *Defendant*,

and

ARLLUK TECHNOLOGY SOLUTIONS, LLC,

       *Intervenor*.

* * * * * * * * * * * * * * * * * * * *

    *Brad W. English*, Huntsville, AL, with whom were *Emily J. Chancey*, *Michael R. Pillsbury*, *Taylor R. Holt*, and *Hunter M. Drake*, for the plaintiff.

    *Nelson Kuan*, Trial Attorney, United States Department of Justice, Commercial Litigation Branch, Washington, D.C., with whom were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, and *Steven J. Gillingham*, Assistant Director for the defendant. *Adam Humphries*, U.S. Department of Agriculture, of counsel.

    *Devon Elizabeth Hewitt*, Washington, D.C., for the defendant-intervenor.

---

[1] This opinion was originally issued under seal pursuant to the protective order (ECF No. 11). The parties agree that no redactions are necessary—the opinion thus appears in full.

OPINION

BRUGGINK, *Senior Judge*.

In this post-award bid protest, AcmeSolv, Inc. ("AcmeSolv") alleges that the United States Department of Agriculture ("USDA") improperly awarded a contract to Arlluk Technology Solutions, LLC ("Arlluk"), the intervenor, for cybersecurity services, because the agency erroneously evaluated AcmeSolv's proposal. Plaintiff seeks a permanent injunction to prevent the USDA from allowing performance under this solicitation by Arlluk and to direct the USDA to perform a new evaluation and make a new award decision. Plaintiff has filed its motion for judgment on the administrative record. The government has cross-moved. Oral argument was held on January 29, 2025. As we announced at oral argument, because plaintiff fails to show that the agency made an arbitrary and capricious award decision or that it was prejudiced by any errors in the procurement process, we deny plaintiff's motion and grant the government's cross motion for judgment on the administrative record.

BACKGROUND

I.    The Solicitation

The USDA Rural Development Technology Office issued a small business set-aside solicitation, No. 12SAD123R003, to procure professional technology services, including managing "a full range of IT cybersecurity, compliance, quality assurance, program management and surge support services." Administrative Record ("AR") 1487. The USDA intended to award a single, Firm Fixed Price, Indefinite Delivery, Indefinite Quantity ("IDIQ") contract, to the offeror who represented the best value to the agency. *Id.* The contract was set for a base period of 12 months with three optional 12-month extension periods for a total estimated value of approximately $24.5 million. AR 1487–88, 1594. The solicitation contemplated work under four Focus Areas: Focus Area One: Cybersecurity, Information Assurance and Risk Management Services; Focus Area Two: Compliance and Assessment Services; Focus Area Three: Quality Assurance and Testing Services; and Focus Area Four: Surge Support Services for Modernization Efforts. AR 557–69.

II.     Evaluation Criteria

In making an award on a best value basis, the agency was to use the following factors for its evaluation:

> Factor 1 – Technical
>     Technical Subfactor 1 – Experience
>     Technical Subfactor 2 – Technical Approach
>     Technical Subfactor 3 – Qualifications
>     Technical Subfactor 4 – Quality Control
> Factor 2 – Past Performance
> Factor 3 – Price

AR 1493–99. When combined, Factors One and Two were equally as important as Price; however, Factor One, Technical, was "significantly" more important than Factor Two, Past Performance. AR 1490.

Under Technical Subfactor One, Experience, the USDA took into consideration "the capabilities, past performance, and experience" of each offeror. AR 1493. The agency required each offeror to provide information from up to five relevant and recent past contracts that best relate to the solicitation's four main Focus Areas. AR 1493. This information included the contract, a brief description of the work performed, period of performance, contract value, invoiced amount, and the client point of contract ("POC"). *Id.* A project was considered "recent" if it was performed within the last three years. *Id.* Under this subfactor, offerors were also required to send questionnaires to the relevant POCs for each listed contract, asking them to "verify the relevant contract information the Offeror listed," indicate whether "the POC would hire [the] company again," and state "whether [the] company's performance was: Exceptional, Very Good, Satisfactory, Marginal, or Unsatisfactory." AR 1494. This information would be "evaluated to determine how closely it matches the [Performance Work Statement's] requirements in scope and size." *Id.*

Technical Subfactor Two, Technical Approach, required each offeror to provide a detailed narrative describing its technical plan to address each Focus Area. AR 1494. This narrative was to identify technical risks and

3

solutions, explain how the work would be completed, demonstrate an understanding of IT security standards, and include any exceptions or assumptions associated with performing the work. AR 1494–95. Technical Subfactor Three, Qualifications, required each offeror to identify and submit resumes for key personnel. AR 1495–96. Each offeror's key personnel were to have the necessary qualifications and certifications, which was to include, among other things, risk management framework experience. *Id.* Technical Subfactor Four, Quality Control, required each offeror to submit a Quality Control Plan for addressing each Focus Area. AR 1497.

Under the Past Performance Factor, the USDA reviewed each offeror's past contract questionnaires already submitted under Technical Subfactor One, Experience. AR 1498. The solicitation stated that, in evaluating an offeror's proposal under the Past Performance Factor, "[t]he primary question under consideration will be whether [the] company's performance was: Exceptional, Very Good, Satisfactory, Marginal, or Unsatisfactory." *Id.* If a past contract reference failed to return a questionnaire to the USDA, "the evaluation rating under the Past Performance Factor . . . may result in an unknown confidence level rating, which is neither favorable nor unfavorable." *Id.* The USDA also retained the right to evaluate Past Performance by reviewing information available in the Contractor Performance Assessment Reporting System ("CPARS"). *Id.* CPARS constitute evaluations for past government contracting work, applying the same performance ratings to six evaluation areas: Quality, Schedule, Cost Control, Management, Small Business Subcontracting, and Regulatory Compliance.  AR 1095, 1109, 1116. To be a valid CPARS reference, the work had to be similar in scope to the solicitation and performed within the last five years. *Id.* at 1498. After evaluating Technical and Past Performance, the USDA applied the following confidence ratings to each of the two factors:

| Rating | Description |
|---|---|
| **Supreme Confidence** | The Government has ***supreme confidence*** that the Offeror understands the requirement, proposes a sound approach, and will be successful in performing the contract with ***no*** Government intervention. |
| **High Confidence** | The Government has ***high confidence*** that the Offeror understands the requirement, proposes a sound approach, and will be successful in performing the contract with ***very little*** Government intervention. |
| **Satisfactory Confidence** | The Government has ***satisfactory confidence*** that the Offeror understands the requirement, proposes a sound approach, and will be successful in performing the contract with ***some*** Government intervention. |
| **Low Confidence** | The Government has ***low confidence*** that the Offeror understands the requirement, proposes a sound approach, or will be successful in performing the contract ***even with*** Government intervention. |
| **No Confidence** | The Government has ***no confidence*** that the Offeror understands the requirement, proposes a sound approach, or will be successful in performing the contract ***even with*** Government intervention. |
| **Unknown Confidence** | This category relates only to the Past Performance factor. If no recent/relevant performance record is available, or the offeror's performance record is so sparse that no meaningful confidence assessment rating can be reasonable assigned, the Offeror will be rated as Unknown Confidence[.] |

AR 1502.

Under the last Factor, Price, the USDA stated that it "may" conduct a price realism analysis to ensure that each offeror's price was fair and reasonable. AR 1499.

III.     The Evaluation and Award

The USDA received 27 proposals. AR 1594. After reviewing each for compliance with the solicitation's requirements, the agency eliminated 20 from consideration, leaving seven offerors, including AcmeSolv, a joint venture between AgovX, LLC ("AgovX") and 22nd Century Technologies Inc., and Arlluk. AR 1328, 1575. AcmeSolv is the incumbent on the existing contract.

The agency appointed a panel of Source Selection Evaluators ("SSEs") to evaluate each of the remaining seven offers under the Technical and Past Performance factors. AR 1172–1293. The Chair of the Source Selection Evaluation Board ("SSEB") subsequently prepared and submitted a "Consensus Evaluation Report" ("CER"), compiling the evaluators' findings, to the Source Selection Authority ("SSA"), the ultimate award decisionmaker. AR 1327–92. Under the Technical factor, the CER gave AcmeSolv 14 positive findings and three negative findings, determining in its negative findings that (1) AcmeSolv's proposal demonstrated only minimal experience in security control testing and "made no mention of automated test scripts for [quality assurance]," relating to Focus Areas Two and Three; (2) AcmeSolv did not mention how it would onboard and train new staff members necessary for meeting surge support services under Focus Area Four; and (3) one of AcmeSolv's proposed Senior Cybersecurity Analysts lacked security control assessment experience, which is called for in Focus Area Two. AR 1386–90.

The CER gave Arlluk 14 positive findings and five negative findings under the Technical Factor, finding that (1) Arlluk provided insufficient detail to determine whether it had the experience level to meet the compliance activities in Focus Area Two; (2) Arlluk did not provide enough experience "related to security testing and compliance control assessments"; (3) Arlluk's experience did not directly mention "supporting Salesforce, Mulesoft, and Accessibility"; (4) Arlluk did not include any exceptions or assumptions in its technical approach; and (5) Arlluk's proposal lacked sufficient detail regarding the Risk Management Framework process. AR 1367–73. The CER gave both offerors an overall rating of "Satisfactory Confidence" for Technical. AR 1365, 1384.

Under the Past Performance factor, all five of AcmeSolv's references were found to be recent and relevant. AR 1392. Four of the returned questionnaires rated AcmeSolv's performance as "Very Good" while one rated performance as "Exceptional." *Id.* The USDA also found CPARs for two relevant contracts previously performed by AcmeSolv for the government. *Id.* One CPAR was for the incumbent work for the USDA. The agency rated AcmeSolv "Exceptional" for Schedule and Cost Control and "Very Good" for Quality and Management on that contract. AR 1103, 1392.

The other CPAR was for work performed by Acmesolv's protégé member, AgovX, for the Air Force, where the agency rated AgovX's performance as "Satisfactory" across all applicable categories. AR 1093–97, 1392.

For Arlluk, out of the five references submitted, only three returned questionnaires. AR 1374. Two references rated Arlluk's performance as "Exceptional," while one rated Arlluk's performance as "Satisfactory." *Id.* No relevant or recent CPARs for Arlluk were identified by the agency. *Id.* Based on these inputs, the CER ultimately gave AcmeSolv a rating of "Satisfactory Confidence" and Arlluk "High Confidence" for Past Performance. AR 1365, 1384.

Based on findings in the CER, the SSEB prepared a Proposal Analysis Report ("PAR") with an award recommendation to the SSA. AR 1575–93. The SSEB first explained that five out of the seven proposals evaluated were eliminated from consideration due to deficiencies in the Technical and/or Price factors, leaving only AcmeSolv and Arlluk as awardable bidders. AR 1592. AcmeSolv's price for its services was $14,750,763; Arlluk's was $12,607,140. *Id.* The SSEB recommended that, because Arlluk's proposal received a "Satisfactory Confidence" rating for Technical, a "High Confidence" rating for Past Performance, and included a price of $12.6 million—more than $2 million lower than AcmeSolv's price—Arlluk's proposal "provided the best overall value for satisfying the USDA's stated requirements." *Id.*

Relying on the SSEB's PAR, the SSA prepared a Source Selection Decision Memorandum ("SSDM"). AR 1594–1601. In her memorandum, the SSA agreed with the SSEB's assessments and ratings. AR 1594. Though the SSA found both offeror's prices to be reasonable and balanced, she agreed that "[Arlluk] offered the 'best value' proposal for fulfilling [the agency's] requirements for the Cybersecurity Contract." AR 1599–1600. On August 7, 2024, the agency informed AcmeSolv that Arlluk was selected for award.

IV.  Procedural History

AcmeSolv filed its protest on August 20, 2024, challenging the USDA's decision under both the Technical and Past Performance factors.

The case was stayed by agreement of the parties and remanded to the USDA to reexamine the award evaluation and, if necessary, take corrective action. Remand Order, ECF No. 26. After reevaluating, the USDA SSA reaffirmed its award to Arlluk on November 14, 2024. AR 1928, 1930. In reaffirming her award decision, the SSA concluded that, under the Technical Factor, (1) AcmeSolv only had minimal experience in security control testing and its proposal did not include any experience in automated test scripts for quality assurance; (2) AcmeSolv's proposal failed to include a plan for onboarding team members for surge support; and (3) AcmeSolv's proposed Senior Cybersecurity Analyst's resume did not show specific control assessment experience, including performing audits or assessments. AR 1922–25. While the SSA recognized that both AcmeSolv and Arlluk had negative findings under the Technical Factor that decreased confidence, she considered Arlluk's Technical Factor rating "superior," because "their technical approach to surge support varied. [Arlluk] raised confidence on surge support, while AcmeSolv decreased confidence in that area. Similarly, [Arlluk] proposed key personnel that raised confidence, while AcmeSolv proposed a Cybersecurity Analyst that decreased confidence." AR 1929.

Under the Past Performance factor, the SSA explained that "receiving a Very Good rating in past performance is more common, and an Exceptional rating is competitively rare," and that "an Exceptional rating demonstrates that [an offeror] not only met, but exceeded the Government's confidence." AR 1926. As a result, because AcmeSolv received only one "Exceptional" rating, while Arlluk received two "Exceptional" ratings, this "supports the Government's assessment of High Confidence" for Arlluk. AR 1926. Altogether, since the USDA considered Arlluk's proposal "superior in both non-price factors and provides a lower price than AcmeSolv's proposal . . . [Arlluk's] proposal offers the best overall value for meeting the USDA's requirements." AR 1929. Moreover, the SSA determined that, even if AcmeSolv were given higher ratings for both non-price factors, it would "not justify paying a $2.1M premium over [Arlluk] because [Arlluk's] proposal was satisfactory, and the savings can be redeployed for other critical needs." AR 1929–30.

After the USDA's remand decision, AcmeSolv filed a new motion for judgment on the administrative record on December 18, 2024, claiming that, because the USDA improperly evaluated AcmeSolv's proposal under the

8

Past Performance factor, the government should be enjoined from awarding the contract to Arlluk and undergo a new evaluation and award decision. The government subsequently filed its cross motion for judgment on the administrative record on January 7, 2025.

## DISCUSSION

I. Standard of Review

The Tucker Act grants this court jurisdiction over bid protests. 18 U.S.C. § 1491(b)(1). In any bid protest, this court reviews an agency's decision pursuant to the standards set forth in the Administrative Procedure Act ("APA"). § 1491(b)(4). Under the APA, we review an agency's action to see if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(1)(A); *see also Off. Design Grp. v. United States*, 951 F.3d 1366, 1371 (Fed. Cir. 2020). The court may "set aside a procurement action if '(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).

"Generally speaking, an agency must evaluate an offeror's proposal based on the criteria set out in the solicitation." *Tetra Tech, Inc. v. United States*, 137 Fed. Cl. 367, 383 (2017). Our review of agency procurement decisions is highly deferential, and the agency "enjoys 'great discretion in determining the scope of an evaluation factor." *Tetra Tech, Inc.*, 137 Fed. Cl. at 383 (quoting *Forestry Surveys and Data v. United States*, 44 Fed. Cl. 493, 499 (1999)). If the agency "provided a coherent and reasonable explanation of its exercise of discretion," we will not set aside its decision. *Mitchco Int'l, Inc. v. United States*, 26 F.4th 1373, 1384 (Fed. Cir. 2022) (quoting *Impresa*, 238 F.3d at 1333). A protester consequently "bears a 'heavy burden' of showing that the award decision had no rational basis." *Tumble Constr., Inc. v. United States*, 172 Fed. Cl. 43, 52 (2024) (quoting *Impresa*, 238 F.3d at 1333). Moreover, a protestor "must show not only that significant errors occurred in the procurement process, but also that the errors were prejudicial." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1057 (Fed. Cir. 2000).

9

Here, the solicitation for cybersecurity services was prepared in accordance with the format in FAR subpart 12.6. AR 1487. FAR Subpart 12.602(b) states, in part, that "[p]ast performance shall be evaluated in accordance with the procedures in section 13.106 or subpart 15.3, as applicable." 48 C.F.R. § 12.602(b). Accordingly, the solicitation notified bidders that "[t]he Government will evaluate all proposals in accordance with FAR 15.305(a)." AR 1492. This provision requires the government to consider the "currency and relevance of the information, source of the information, context of the data, and general trends in contractor's performance." 48 C.F.R. § 15.305(a)(2)(i).

AcmeSolv claims that, in violation of the FAR and solicitation, instead of considering the "depth and breadth" of plaintiff's past performance, the USDA "did not consider any information beyond the [plaintiff's] top of the line rating" in each questionnaire and CPAR. Pl.'s MJAR at 10. This review, it claims, was superficial, not exploring the context or trends of performance, causing it to be prejudiced by the agency's erroneous evaluation. The government responds that the agency rationally evaluated plaintiff's past performance in accordance with the FAR and solicitation, did not err in its best value tradeoff, and even if the plaintiff's past performance should have been given a higher confidence rating, that error would not have prejudiced the plaintiff. After reviewing the administrative record and arguments before the court, we agree with the government.

II. The Past Performance Evaluation Was Reasonable

We give "the greatest deference possible . . . to the agency" when reviewing an agency's past performance analysis. *Dynamic Sys. Tech., Inc. v. United States*, 127 Fed. Cl. 551, 562 (2016) (quoting *Sci. & Mgmt. Res., Inc. v. United States*, 117 Fed. Cl. 54, 65 (2014)). Our role is merely to review the past performance rating to ensure it was reasonable and consistent with the solicitation's criteria and applicable law. *Glenn Def. Marine (Asia), PTE Ltd. v. United States*, 105 Fed. Cl. 541, 564 (2012), aff'd, 720 F.3d 901 (Fed. Cir. 2013). Though an agency's past performance evaluation must be reasonable and consistent with the solicitation's evaluation criteria, a protestor "is not entitled to an exhaustive comparison of past performance." *Plasan N. Am., Inc. v. United States*, 109 Fed. Cl. 561, 572, 575 (2013).

Indeed, "[t]he agency need not perform a comprehensive analysis of an offeror's entire contracting history." *Westech Int'l, Inc. v. United States*, 79 Fed. Cl. 272, 294 (2007).

AcmeSolv asserts the agency took a purely "mathematical" and "quantitative" approach to its designated confidence ratings. Pl.'s MJAR at 9–10, 12, 16. This was error, it alleges, because it does not comply with FAR 15.305(a), which it asserts contemplates a more nuanced evaluation. In making this argument, AcmeSolv cites the Source Selection Decision Document, where the SSA noted that Arlluk "received a High Confidence rating by the Government since the *majority* of questionnaires rated their performance as Exceptional, with only one being rated as Satisfactory." AR 1492 (emphasis added). AcmeSolv also cites the Individual Evaluation Worksheet for Allurk from one SSE, in which that SSE stated that "[s]ince there were three submissions, one was satisfactory and two were exceptional, this *averages* to high confidence with future performance." AR 1268 (emphasis added). To AcmeSolv, this indicates that instead of considering the entire context of its past performance as required under FAR 15.305(a), the agency simply counted the number of "Exceptional" ratings in giving its overall confidence rating. AcmeSolv claims its relevant CPARS "included a wealth of information the Agency simply did not evaluate." Pl.'s MJAR at 11.

While the agency's analytical steps at both the SSEB and SSA levels were less than fulsomely described, there is no question that the agency analyzed both the relevancy and recency of each questionnaire and CPAR before assigning an overall confidence rating. AR 1391–92. For example, when reviewing AcmeSolv's CPAR for one of its past contracts with Lackland Air Force Base, a contract that was deemed both recent and relevant, the agency not only noted AcmeSolv's overall rating of "satisfactory," but also recognized that the "work reviewed is relevant to [Focus Area] 1," pertaining to cybersecurity, information assurance and risk management services. AR 1392. When reviewing some of AcmeSolv's other CPARs, in addition to their respective overall ratings, the agency noted that AcmeSolv's past contract work for the Defense Information Systems Agency ("DISA") "was not directly related to this PWS" and was determined "not relevant," that the work for both the DLA Contracting Services Office ("DCSO") and the Defense Health Agency had "insufficient details provided

11

by the rater" to determine their relevancy, and that the work for the incumbent contract with the USDA also included additional internal communications between the agency and AcmeSolv. *Id.* These comments show that the agency considered other contextual information in addition to the overall ratings.

AcmeSolv counters that one SSE applied solely a quantitative approach by assigning Arlluk a "high confidence" rating based on the "average" of received questionnaire ratings. AR 1268. This evaluation, however, was only one of six SSE reviews for both AcmeSolv and Arlluk, which were merged into the SSEB's evaluation and thereafter reviewed again by the SSA. One of the other SSEs, for example, in filling out her Individual Evaluator Worksheet, gave Arlluk a past performance confidence rating of "high confidence" after providing a more in-depth analysis, noting that "[Arlluk] has the experience and skills needed to execute this contract, other than the lack of details of past performance with control assessment work. In addition they have experience working with loan and grant programs." AR 1258. Thus, even if one SSE conducted a "quantitative" past performance analysis, we cannot find that the work of the other SSEs, the SSEB, and the SSA, did not collectively constitute a substantive review of past performance.

AcmeSolv offers its own mathematically based challenge to its past performance rating of "Satisfactory Confidence." Under AcmeSolv's mathematical approach, AcmeSolv assigns numerical values to each adjectival rating in the questionnaires and CPARs, so that "Exceptional" is a "5," "Very Good" is a "4," "Satisfactory" is a "3," "Marginal," is a "2," and "Unsatisfactory" is a "1." Pl.'s MJAR at 20. AcmeSolv also assigns these numerical values to the overall past performance confidence ratings, resulting in "Supreme Confidence" as a "5," "High Confidence as a "4," "Satisfactory Confidence" as a "3," "Low Confidence" as a "2," and "No Confidence" as a "1." *Id.* at 19. In averaging all seven of its questionnaire and CPAR ratings, AcmeSolv calculates an average rating of "4.07" or "Very Good." *Id.* at 20. AcmeSolv argues that, when applying the average rating of "4.07" to the overall past performance confidence ratings, AcmeSolv's rating should equate to a "4" or "High Confidence." *Id.* at 19–20.

The problem with AcmeSolv's mathematical approach is that the SSA would disagree with AcmeSolv's premise that each confidence rating can be assigned a proportional numerical value. In affirming the award to Arlluk, the SSA explained that "[s]ince receiving a Very Good rating in past performance is more common, and an Exceptional rating is comparatively rare, the fact [that AcmeSolv] only received one Exceptional rating supports the Government's assessment of Satisfactory Confidence, given that this is a qualitative evaluation." AR 1926. Due to the relative rarity of an "Exceptional" rating, in other words, the SSA assigned it a disproportionately higher value than the "5" plaintiff would have given it. Because AcmeSolv received one rating of "Exceptional" compared to two for Arlluk, we cannot say the agency's rating of "Satisfactory Confidence" for AcmeSolv's past performance and "High Confidence" for Arlluk was arbitrary. These are matters better left to the contracting entities.

Finally, in arguing that the agency did not consider the "depth and breadth" of AcmeSolv's past performance information, AcmeSolv asserts the agency should have also considered the quantity of AcmeSolv's questionnaires and CPARs. More specifically, AcmeSolv claims that, because Arlluk had two fewer returned questionnaires than AcmeSolv and no relevant and recent CPARs on file—yet received a higher confidence rating in the past performance factor—AcmeSolv was unable to fairly compete for the contract since "[t]he Agency's evaluation process inherently rewarded offerors who had less experience to evaluate." Pl.'s MJAR at 12.

Essentially, AcmeSolv claims it should have received additional credit for its quantity of past performance references. However, AcmeSolv imposes an evaluation criterion not found in the solicitation. The solicitation announced that, in evaluating an offeror's proposal under the Past Performance Factor, "[t]he *primary* question under consideration will be whether [the] company's performance was: Exceptional, Very Good, Satisfactory, Marginal, or Unsatisfactory," and "[i]f the Offeror's references do not respond, the evaluation rating under the Past Performance Factor . . . may result in an unknown confidence level rating, which is neither favorable nor unfavorable under the Past Performance section." AR 1498 (emphasis added). The solicitation clearly stressed the importance of quality over quantity, and that unresponsive references could result in a neutral rating for

13

the bidder. Bidders were thus on notice that the sheer number of references would not be determinative in selecting an awardee.[2]

In assigning its confidence ratings for the Past Performance Factor, the agency did not merely do a quantitative analysis of only the top-of-the-line ratings from the questionnaires and CPARs. It made a qualitative analysis of a variety of past performance information in accordance with the solicitation. Accordingly, the agency's past performance evaluation was reasonable.

III.   AcmeSolv Has Not Been Prejudiced

Even if a protestor can show errors in the agency's award decision, the protestor "must show it was prejudiced by a significant error in the procurement process." *REV, LLC v. United States, Aptive Res., LLC*, 91 F.4th 1156, 1163 (Fed. Cir. 2024) (quoting *CliniComp Int'l, Inc. v. United States*, 904 F.3d 1353, 1358 (Fed. Cir. 2018)). In other words, the protestor must show that, "had it not been for the alleged error in the procurement process, there was a reasonable likelihood that the protestor would have been awarded the contract." *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1562 (Fed. Cir. 1996). The protestor must have "greater than an insubstantial chance of securing the contract if successful on the merits of the bid protest." *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003). For example, a protestor fails to show prejudice where its non-price factors are outweighed by its higher-priced proposal. *See Carahsoft Tech. Corp. v. United States*, 86 Fed. Cl. 325 (2009) ("No amount of agency reasoning could justify selecting a higher-priced proposal, where a lower-priced and technically equal proposal is available.").

Even if AcmeSolv should have been awarded a "High Confidence" rating for past performance, it faces the problem that this merely puts it even with Arlluk in technical and past performance, while AcmeSolv's price remains $2.1 million higher than Arlluk's. AcmeSolv attempts to get around

---

[2] To the extent AcmeSolv challenges the solicitation's provision regarding non-responsive references, that argument is precluded under *Blue & Gold Fleet*, because it failed to challenge or inquire about the provision before the agency's award selection. *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1313 (Fed. Cir. 2007).

this problem by arguing that its technical "Satisfactory Confidence" rating was actually better than Arlluk's "Satisfactory Confidence" rating, because it received two less negative findings than Arlluk. AcmeSolv argues that the agency should be required to do a more rigorous tradeoff analysis than simply relying on the price difference.

The difficulty with that argument is that the remand decision anticipates AcmeSolv's argument. According to the agency's amended source selection decision memorandum, "[w]hile [Arlluk] and AcmeSolv both had areas of experience that decreased confidence, their technical approach to surge support varied. [Arlluk] raised confidence on surge support, while AcmeSolv decreased confidence in this area. Similarly, [Arlluk] proposed key personnel that raised confidence, while AcmeSolv proposed a Cybersecurity Analyst that decreased confidence." AR 1929. The SSA, aware of both offerors' number of negative findings, nevertheless concluded Arlluk's technical rating "superior" to AcmeSolv's. *Id.*

AcmeSolv's prejudice argument thus fails because, under the Price Factor—a factor as important to the award decision as both the Technical and Past Performance Factors combined—Arlluk's proposal was over $2 million less than AcmeSolv's. AR 1490, 1929. The SSA determined that the amount in savings was "significant," and that:

> Even if the court were to find that AcmeSolv's technical and past performance ratings should be increased to high confidence, [it] would not justify paying a $2.1M premium over [Arlluk] because [Arlluk's] proposal was satisfactory, and the savings can be redeployed for mother critical needs in RD's mission to stimulate, grow and protect the American Rural economy.

AR 1929–30. Accordingly, even if we determined AcmeSolv should have received a higher past performance confidence rating, remand to the agency would be unnecessary because the agency remand decision precludes the scenario AcmeSolv hypothesizes. Even if AcmeSolv was *higher* rated, the agency considered the cost savings sufficient to justify the award to Arlluk.

CONCLUSION

15

AcmeSolv has failed to show that the USDA's award decision was arbitrary or capricious, or that even if the agency made errors in the procurement process, it was unfairly prejudiced. We therefore need not address the issue of injunctive relief. Accordingly, AcmeSolv's motion for judgment on the administrative record is denied. The United States' cross-motion for judgment on the administrative record is granted. The Clerk of Court is directed to enter judgment accordingly. No costs.

s/Eric G. Bruggink  
ERIC G. BRUGGINK  
Senior Judge